[S. F. No. 4318.   In Bank.—December 9, 1907.]

ELLEN RIANDA, Administratrix, etc., Respondent, v.
WATSONVILLE WATER AND LIGHT COMPANY
et al., Appellants.

QUIETING TITLE—PRIOR CONVEYANCE BY PLAINTIFF—ADMISSION OF GEN-
UINENESS AND DUE EXECUTION OF DEEDS—FAILURE TO FILE AFFI-
DAVIT.—In an action to quiet title, where the defense is that the
property involved had previously been conveyed by the plaintiff
and deeds are attached to the answer and made a part thereof
showing the conveyance, the genuineness and due execution of such
deeds are deemed admitted by the plaintiff, in the absence of the
filing of an affidavit denying these matters, as required by section
448 of the Code of Civil Procedure.

ID.—DEED CARRIES APPURTENANCES TO LAND—WATER-RIGHTS.—A deed
of grant, bargain, and sale, which contains no reservations, has the
legal effect of carrying all legal or equitable interests the grantor
may have in the land conveyed, including all water-rights or
riparian rights appurtenant thereto, and after the execution of such

a deed the grantor cannot maintain an action to quiet title to such water-rights as against an alleged fraudulent grantee of the same claiming under a prior conveyance thereof.

ID.—ADVERSE POSSESSION—TITLE TO RIPARIAN RIGHT.—A title to a riparian right acquired by adverse possession passes by a conveyance of the land to which the right is appurtenant.

APPEAL from a judgment of the Superior Court of Santa Cruz County and from an order refusing a new trial. Lucas F. Smith, Judge.

The facts are stated in the opinion of the court.

Wyckoff & Gardner, and Charles A. Shurtleff, for Appellants.

George P. Burke, and Dickerman & Torchiana, for Respondent.

LORIGAN, J.—This appeal is prosecuted by the defendants from a judgment in favor of plaintiff and from an order denying their motion for a new trial.

The action was brought to quiet title to certain riparian and other water-rights in Santa Cruz County, and to set aside two certain deeds made by plaintiff in this action to the defendants Smith and Montague on the ground of fraud in their procurement.

Referring generally to the pleadings, it is alleged in the complaint that Carmen A. de McKinlay died on October 6, 1901, and that plaintiff was duly appointed and qualified as administratrix of her estate; that on September 27, 1884, said Carmen A. de McKinlay was the owner in fee simple of a tract of land in Santa Cruz County, being lot 1 of the Rancho Los Corralitos, containing eight hundred and fifty-five acres, which land embraced part of a certain lake known as "Pinto" Lake, and part of a certain creek known as "Corralitos" Creek, in the waters of both of which she had riparian rights appurtenant to her said land; that on said September 27, 1884, and on June 27, 1885, said Carmen A. de McKinlay made and executed in favor of said Smith and Montague deeds in which she granted to them "all and singular the water and riparian rights and privileges of every kind and description which belong or in any manner

pertain to" the land described in the complaint, together with a right to have, take, and use the flow of the waters of "Corralitos" Creek, and to enter and lay down pipes or flumes on the lands of the grantor "for the convenient use and management and appropriation of said water, water-rights and riparian rights as aforesaid," with a covenant on the part of the grantees as to a given quantity of water from said Corralitos Creek which the grantor was entitled to take for usual household, culinary, and domestic purposes, including the watering of stock on her premises, from any pipe or flume laid by said grantees, and which, on her demand, they would supply her from any point on the pipe or flume-line she might designate.

It was further alleged that when Mrs. McKinlay executed said deeds she did not understand English, and had no independent advice relative to the transactions evidenced by them; that when the grantees presented said deeds for execution, the portion thereof purporting to convey water, water-rights, and riparian rights was not read or explained to her; that on the contrary said grantees informed her that the deeds effected simply the transfer by her of a right to enter her lands for the purpose of laying pipes and flumes to take water from Corralitos Creek; that she did not know that said deeds contained anything purporting to convey water, water-rights, or riparian rights other than pertained to the waters of said Corralitos Creek; that she did not know that she had conveyed her water-rights and riparian rights in either of said deeds, and did not discover the contents of them, or the legal effect of said deeds until December, 1900, when she immediately took steps to institute suit to set said deeds aside, but before she was able to do so died.

In another count it is alleged that there was no consideration for the deeds; that the covenant therein by the grantees to furnish her water from the pipes or flumes had never been fulfilled, and that when the covenant in that regard was made by them in said deed it was made without any intention on the part of either of them of performing it.

The last count set up a claim of adverse possession to all said water and water-rights by Mrs. McKinlay from the date of said deeds to the time of her death. It appears from the deeds, which are attached to the complaint, that the one

executed by Mrs. McKinlay September 27, 1884, was recorded January 4, 1901, and the one executed June 27, 1885, was recorded on July 10, 1885. An inspection of the deeds shows that the only difference in their contents is that the last deed specifies the size of the service-pipe through which Mrs. McKinlay might take water from the pipe or flume of the grantees, with the provision that she should furnish the pipe for that purpose.

It is further alleged that Smith and Montague in 1897 conveyed to the defendant the Watsonville Water and Light Company all the riparian rights and privileges acquired by them under said deeds, but with notice that when Mrs. McKinlay executed them she did not know there was anything in them purporting to convey any water or water-rights whatever.

The prayer was for a decree adjudging that the estate of said Carmen A. de McKinlay, deceased, is the owner of all the water, water-rights, and riparian rights and privileges of every kind belonging or pertaining to the land described in the complaint.

A demurrer, general and special, to the complaint having been overruled, the defendants jointly answered, denying all the allegations of the complaint except the execution of the deeds sought to be set aside and set up as a further and separate defense, that on August 6, 1901, the said Carmen A. de McKinlay by deed of gift granted and conveyed a portion of the property described in the complaint to her daughter Flora McKinlay Duckworth, and on the same date, by similar deed, conveyed to her daughter Ellen McKinlay Rianda another portion of said property, reserving, however, to herself, in the whole of said land so separately conveyed, a life estate. The said two conveyances to said daughters comprised and embraced all the property described in the complaint.

It was then averred that said Carmen A. de McKinlay subsequent to said conveyances to her daughters, and on October 6, 1901, died, and that after that date neither she nor her estate, nor the administratrix thereof, had or possessed any right, title, or interest in and to the land described in the complaint, or in any of the hereditaments or appurtenances thereunto appertaining or belonging; that said

estate has no interest in the subject-matter of the action and is not the real party in interest. Both deeds from Mrs. McKinlay to her daughters were set forth at length as exhibits to the answer and made a part thereof.

We have stated the contents of the pleadings in this general way as sufficiently presenting the point upon which this appeal is to be determined.

While many grounds are urged by appellants for a reversal of the judgment and the order denying a new trial—that the court erred in overruling the demurrer to the complaint; insufficiency of the evidence to sustain the findings, and errors alleged to have been committed in the admission of evidence and in other respects—the view we take upon another point presented by appellants makes it unnecessary to enter into a consideration of these matters at all.

This point is addressed to the right of the plaintiff as administratrix of the estate of Carmen A. de McKinlay, deceased, to maintain this action. In that regard it is urged by appellants that as it is admitted by the pleadings that Mrs. McKinlay had before her death conveyed by deeds of grant all the property described in the complaint to her two daughters, such conveyances carried with them, as the legal effect thereof, all interest, legal or equitable, she had in the property, including all water or riparian rights pertaining or appurtenant to said lands, and hence the estate of Mrs. McKinlay had no interest whatever in the lands described or in the water or riparian rights appurtenant or incident thereto. In considering this point it will be observed that in the answer of defendants, to which we have called attention, the conveyances to her daughters by Mrs. McKinlay of the land described are set forth in full and made part of that pleading. There was no affidavit filed by plaintiff denying their genuineness and due execution, and hence under section 448 of the Code of Civil Procedure these matters were deemed admitted. This being so, the question then is squarely presented as to the effect of such conveyances upon the right of the representative of the estate of Mrs. McKinlay, or her estate, to maintain the action.

We think that in view of such conveyances no such right exists. The terms of conveyance used in the deeds to the daughters are "grant, bargain, sell and convey" which are of

sufficient recognized legal effect to carry all legal or equitable interests she may have had in the land, together with all that was appurtenant or incident to it or beneficial for its enjoyment, and the effect of their use in the conveyances of the land in question was to divest the grantor, Mrs. McKinlay, of any interest whatever she possessed or might have in and to the water-rights or riparian rights appurtenant thereto.

Counsel for respondent seem to take the position that because Mrs. McKinlay had prior to her conveyances to her daughters conveyed these riparian rights to Smith and Montague, that therefore they were severed from the lands to which they were appurtenant and did not pass under the conveyances to her daughters of such lands. There is certainly no reservation as to such rights in the deeds to her daughters, nor anything pretending to accomplish it and the deeds themselves stand unassailed. As to a severance of the riparian rights in the lands to which they were appurtenant the very theory of this case is that nothing of the kind was ever accomplished. If the allegations of the complaint were true, that the purported conveyances of the water and water-rights by Mrs. McKinlay to Smith and Montague were obtained by fraud—the Watsonville Light and Water Company taking with notice thereof—then at least as between these parties Mrs. McKinlay had never parted with her title to them; there then never was a severance effected in either law or equity as against Mrs. McKinlay and under the deeds to her daughters by virtue of the comprehensive language of conveyance used in them all, her interest, of whatever character, passed with the conveyances of the lands to which they were appurtenant Either these riparian rights were appurtenant to the land conveyed to the daughters at the time the conveyances to them were made, or they were not. If they were not it was because they had previously been severed by a valid conveyance of them to Smith and Montague, and hence therefore neither Mrs. McKinlay, during her lifetime, nor her estate at her death, had any interest in them. If, on the other hand, the conveyances to Smith and Montague were void, then in legal contemplation these rights as between Mrs. McKinlay and her daughters as grantees, had never been severed from the lands, and passed under the conveyances of it from her to them, the granting clause of which we have seen

was ample to convey them. In neither view could Mrs. Mc-
Kinlay nor her estate have any claim to such riparian rights
subsequent to the last deeds—those to her daughters. Let
us concede, for the purpose of illustration, that the deeds
to Smith and Montague were void and that prior to making
the conveyances to her daughters, Mrs. McKinlay had suc-
cessfully maintained an action against the defendants here
and had succeeded in having the deeds to the defendants set
aside for fraud. The effect of such successful effort would
not be to revest in Mrs. McKinlay the riparian rights purport-
ing to have been conveyed to Smith and Montague as severed
and distinct from the lands to which they had been riparian
when such conveyances were made. The legal effect would
be to declare that such rights had not been severed as appur-
tenant to the lands if an invalid attempt had been made to
sever them, and it could not for a moment be contended that
the subsequent deeds to her daughters, such as she made of
the lands described in the complaint, did not carry such water-
rights and riparian rights as appurtenant to them. The same
result would follow if the conveyances to the defendants were
nullified in the present action of the administratrix. If the
attempted severance by the conveyance to Smith and Mon-
tague of such riparian rights from the lands to which they
were appurtenant should now be declared void, the legal effect
would be to restore or attach them as appurtenant to the
lands conveyed to the daughters. And, even if as claimed,
in one of the counts of the complaint, Mrs. McKinlay had
acquired title by adverse possession to these riparian rights
subsequent to the deeds to Smith and Montague, unquestion-
ably whatever right she so acquired passed under her deed
to her daughters. In fact, as far as any interest which she
had in said water or riparian rights is concerned the compre-
hensive terms of the conveyances to her daughters of the
lands to which they were appurtenant carried them and she
and her estate would be estopped from asserting that they
did not. The estate could not in any view have any interest
in them.

Little authority is cited on either side as to the effect of the
conveyances to the daughters of the riparian rights involved
here. The appellants insist, and we think correctly, that the
rule is so clear that they did pass under them, and hence that

CLII Cal.—34

the estate of the grantor thereof had no interest in them, as to make such citations unnecessary. Counsel for respondent rely on the cases of *Kimball* v. *Gearhart*, 12 Cal. 28, and *Collins* v. *O'Laverty*, 136 Cal. 31, [68 Pac. 327], as sustaining their position. But the cases cited lend no support to their claim. The Kimball case simply declares that while a deed carried the property and future use of water, it did not retroact to carry a right of damages for the past illegal use of it. This case does not support in any particular the position of respondent. The Collins case was an action by the administrator of the estate of Collins to set aside two conveyances of land made by his intestate a few days before his death. The result of such an action, if successful, would have been to vest the property in the estate of Collins. There is no analogy between the Collins case and the one at bar. If, after making the alleged void deed, Collins had conveyed the property to third parties, the case would be analogous to the one under consideration. The fact that Mrs. McKinlay did, and Collins did not, make such a subsequent conveyance differentiates the two cases. In the Collins case the property involved in the fraudulent deed, if such deed were set aside, would inure to the estate of Collins. In the present case, if the claim of plaintiff's intestate was sustained, and the deeds to Smith and Montague set aside, the estate of Mrs. McKinlay would not get the property involved—the riparian rights— because the title and right asserted thereto had passed from decedent in her lifetime by the conveyances to her daughters of the lands to which they were appurtenant. In the Collins case this court said: "The sole test of the administrator's right of action is the right of the estate to the property." When we apply this test to the matter under review it is evident that the plaintiff cannot recover because the administratrix has no right to the property involved in the action and the estate no interest in it. No further elaboration of the proposition is necessary.

Therefore, in the view we take, the judgment and order must be and is reversed, and as the plaintiff has no interest in the subject-matter of the action and is without right to maintain it, the lower court is directed to dismiss it.

Shaw, J., Angellotti, J., McFarland, J., and Henshaw, J., concurred.