[L. A. No. 2316. Department One.—December 15, 1909.]

M. L. WOLFF, Respondent, v. THOMAS CLOYNE, Appellant.

VENDOR AND VENDEE—MUTUALITY OF CONTRACT—WANT OF TITLE IN VENDOR AT TIME OF CONTRACT—TITLE SUBSEQUENTLY ACQUIRED.— A contract for the sale of land is not rendered lacking in mutuality, so as to prevent its specific enforcement by the vendor, by the fact that he did not own the legal title to the land at the time the contract was executed, if he owned it at the time when he made a tender of performance as required by the contract.

ID.—UNCERTAINTY OF DESCRIPTION—REFERENCE TO OTHER AGREEMENT.—Where the land agreed to be sold by the contract is described as a certain piece of "some 245 acres more or less lying north of" a

designated place, and being the same piece the vendor "bought lately," the description may be rendered certain, and shown to include a certain right of way, by reference to the agreement under which the vendor had bought.

ID.—RIGHT OF WAY PASSES BY DEED.—A right of way which has become appurtenant to a tract of land passes by subsequent deeds thereof although not specifically described.

ID.—PAROL AGREEMENT FOR ASCERTAINMENT OF AREA—STATUTE OF FRAUDS.—Where by a written contract a definite tract of land described as containing "some 245 acres more or less," is agreed to be sold at a specified price per acre, payable when the deed is given, a cotemporaneous oral agreement that the deed was not to be made until the area of the land was ascertained by a survey which the vendor was to have made, does not render the contract void by bringing it within the statute of frauds.

ID.—SPECIFIC PERFORMANCE BY VENDOR—PLEADING REASONABLENESS OF CONTRACT—DEFECTIVE ALLEGATIONS CURED BY JUDGMENT.—In an action by a vendor for the specific enforcement of a contract for the sale of land, a defective averment in the complaint as to the justice and reasonableness of the contract is cured by findings and judgment for the plaintiff, where the averments of the answer, and the evidence offered at the trial, show that each of the parties understood that such issue was presented.

ID.—FORM OF JUDGMENT FOR VENDOR—DIRECTIONS FOR DELIVERY OF DEED.—In such action, where the complaint alleges and the court finds, that the deed which was tendered to the defendant before the action was begun was filed with the clerk of the court "to be delivered to the defendant under such conditions as the superior court may order and direct," the better practice is for the judgment to contain a direction to the clerk for the delivery of the deed upon the satisfaction of the judgment. The omission of such a direction will not warrant a reversal of the judgment, but the defect may be cured by its modification on appeal.

APPEAL from a judgment of the Superior Court of Ventura County and from an order refusing a new trial. Felix W. Ewing, Judge.

The facts are stated in the opinion of the court.

I. W. Stewart, and Orestes Orr, for Appellant.

Charles F. Blackstock, for Respondent.

SHAW, J.—The defendant appeals from the judgment and from an order denying his motion for a new trial.

The complaint states a cause of action to enforce specific performance of the following contract:—

"OXNARD, December 29, '06.

"I have this day sold to Tom Cloyne and Tom Cloyne has bought of M. L. Wolff a certain *Pce* of land some 245 acres more or less lying north of the Revolon & Dreyfus place and being the same *Pce* M. L. Wolff bought lately at 70.00 per acre one thousand dollars receipt of which is hereby acknowledged balance payable when deed is given subject to lease given to Otte.

"M. L. WOLFF,
"THOMAS CLOYNE."

It is alleged that this contract was intended to and in fact did refer to a certain tract of land, the description of which is fully set forth. The land is a part of a larger rectangular-shaped tract containing three hundred and twenty acres, known as "parcel E," running a mile east and west and half a mile north and south, bounded on the west by a road known as the "Wood Road." A slough extended across the western part of this tract, from north to south, leaving about seventy-five acres between it and said road. The tract described as sold, and which Wolff had then recently bought, was the portion of the three hundred and twenty acres lying east of the slough and including a right-of-way over a strip along the bank of the slough, northwesterly over the land lying north, extending from the northwest corner of the land sold to the Wood Road, a distance of about nine hundred feet. The punctuation of the contract as shown in the record is such as to leave the price uncertain. It is not controverted, however, that the words "70.00 per acre" states the price of the sale to Cloyne and not the price for which Wolff had "bought lately."

The answer admits the execution of the contract, but avers that defendant entered into it in the erroneous belief, induced by Wolff's representations at and before the time of its execution, that the tract referred to extended to and abutted upon said Wood Road and included the whole of said "parcel E," whereas, in fact, there is no road or other means of access to the tract described in the complaint and it extends west only to the slough.

The court found that all the allegations of the complaint were true, that the land was worth the price stated, that the right-of-way mentioned in the description set forth in the complaint afforded means of access to it, and that the defendant did not make the contract under any mistake as to its size or location, but was fully informed thereof. It is contended that the facts particularly stated are not sustained by the evidence.

Upon these points the case as presented is the familiar one of a conflict in the evidence. There was abundant evidence to sustain the court's findings and some to the contrary. In such a case the findings are conclusive upon this court. A review of the evidence would be of no value.

At the time the contract was made, Wolff did not have title to the land, but held an agreement or option to purchase it from the real owner. The price named being seventy dollars per acre, a survey was necessary to fix the exact quantity and price of the land, and at the time of its execution there was an oral agreement that Wolff would have a survey made and that as soon as this could be done the deed would be made and the balance of the price paid. The option which Wolff held had, by its terms, expired before the sale from Wolff to Cloyne, but it had been extended for an indefinite period by the owner.

It is contended that the contract was not mutual, and therefore not enforceable, because Wolff did not then hold the title. He had at that time a valid agreement from one Etting, the real owner, under which he could obtain title. This agreement provided for a mortgage for certain deferred payments of the price, but at the time of the contract with Cloyne negotiations were pending between Wolff and Etting for the payment of the entire price and the execution of a deed from Etting to Wolff immediately. This was afterwards agreed to between them and as soon as Wolff could get the necessary survey made he paid Etting, obtained the title and tendered to Cloyne a good and sufficient deed purporting to convey the land to Cloyne, which Cloyne refused to accept. These conditions are sufficient to make the contract mutual. (*Easton v. Montgomery,* 90 Cal. 315, [25 Am. St. Rep. 123, 27 Pac. 280], Civ. Code, sec. 3390, subd. 4.) At the time Wolff was required to convey the title, he had obtained it, and

Cloyne could then have enforced performance, had Wolff refused it.

· There is no merit in the point that the contract of Wolff and Cloyne is uncertain because it did not mention the right-of-way to the Wood Road. It described the land as that which Wolff had lately bought, lying north of the Revolon and Dreyfus place. He had lately bought a tract thus situated from Burson, to whom the agreement from Etting, the owner, had been executed. This agreement described the right-of-way in question. The extrinsic circumstances thus expressly referred to, sufficed · to make the description complete and certain. Furthermore, the right-of-way established by the Etting agreement and deed would constitute an appurtenance, and would go with the land, although not specifically described in subsequent deeds. (*Rianda* v. *Watsonville etc. Co.*, 152 Cal. 527, 528, [93 Pac. 79]; *Stanislaus W. Co.* v. *Bachman*, 152 Cal. 724, [93 Pac. 858].)

The oral agreement that the deed was not to be made until the area of the land was ascertained by a survey which Wolff was to have made, does not render the contract void. By the contract, Wolff agreed to sell "a certain *Pce* of land some 245 acres more or less" . . . "at 70.00 per acre." It sufficiently identified the land, but the price depended on the number of acres it contained. The price could be made certain by a survey or by agreement as to the area, and they chose to have it fixed by a survey. The price could not be fully paid until it was ascertained. By the express terms of the contract, the deed was not to be made until the price was paid. By implication, therefore, the deal was not to be closed until a survey was made, or the area ascertained in some way. The oral agreement added nothing to the force of the agreement to convey, except to put the burden of the survey upon Wolff, instead of upon both of them. This we regard as immaterial and not sufficient to bring the contract within the statute of frauds.

It is further claimed that the complaint does not show that the contract is just and reasonable. It is alleged that the contract is fair, reasonable, and just, that defendant lived in that vicinity, that he was a successful farmer, and had known the land for many years, that land adjacent to it has been sold since at the same price, and that the land in question

produces crops annually that pay a reasonable interest on the price agreed upon. The evidence that the land, at the time of the sale and ever since, was worth at least the price fixed by the contract, was full and satisfactory. It is not disputed that the defendant had been for many years a successful farmer of that vicinity, nor that he examined the land the day before the contract was made. The proof that the contract was fair, just, and reasonable was ample. The complaint does not directly allege the value, and its averments on the general subject are somewhat argumentative and indefinite. The answer contains elaborate averments that the land was worth far less than the price, and other facts to show that the contract was not fair, just, nor reasonable. It is apparent that the parties understood that this issue was presented. A large part of the evidence on both sides was devoted to the question whether or not the contract was fair, just, and reasonable, and that seems to have been the principal controversy. We think the defects in the form of the averments of the complaint in that respect should be considered as cured by the answer and by the findings and judgment.

The complaint alleges that the deed which was tendered to the defendant before the action was begun, was filed with the clerk of the court "to be delivered to the defendant under such conditions as said superior court may order and direct." The finding is that this is true. The judgment does not mention the land or the deed nor give any directions concerning its delivery. It is a simple judgment that the plaintiff recover of the defendant the balance of money found to be due upon the contract of sale. It can scarcely be supposed that the defendant would have any difficulty in obtaining such delivery of the deed upon payment of the judgment. The better practice, however, in all such cases, is to insert in the decree the proper direction to the clerk for the delivery of the deed upon satisfaction of the judgment. It is not necessary to reverse the judgment for this defect. It can be cured by a modification thereof. There are no other points requiring discussion.

The order denying a new trial is affirmed. The judgment is hereby modified by adding thereto the following clause:

Payment of the sums herein adjudged to the plaintiff may be made to the clerk of this court for the plaintiff, and said clerk shall thereupon deliver to the defendant, his heirs,

assigns or legal representatives, the deed for the land in controversy deposited by plaintiff with the clerk at the beginning of this action. If such payment is made to the sheriff said deed shall be delivered to the sheriff by the clerk and by the sheriff delivered to defendant upon payment. If paid to the plaintiff he shall concurrently deliver the deed.

As thus modified, the judgment is affirmed. Defendant shall recover of the plaintiff one third of the costs of the transcript on appeal.

Sloss, J., and Angellotti, J., concurred.