[Civ. No. 10658. Third Dist. Dec. 13, 1963.]

SALLY THOMPSON, Plaintiff and Respondent, v. EVARISTA BESKEEN, Defendant and Appellant.

Lyle H. Shattuck and Broyer & Shattuck for Defendant and Appellant.

F. L. Sinclair and Bowers & Sinclair for Plaintiff and Respondent.

FRIEDMAN, J.—Plaintiff Sally Thompson is the widow of Irving Thompson. Irving was the son of Anna Thompson. Irving had named his mother as sole beneficiary of a group life insurance policy, the premiums for which were paid from his earnings. Irving and his mother also had a joint savings account and held federal savings bonds as joint tenants. Anna had placed her home in the joint names of Irving and herself. In 1956 Irving had a heart attack. When he returned from the hospital he and plaintiff discussed the possibility that he might predecease his mother, Anna. On August 2, 1957, Irving and Anna went to the office of Floyd Bowers, an attorney in Roseville, for the purpose of discussing preparation of Anna's will. According to Bowers' testimony, Irving and Anna both expressed the desire that the savings account, the bonds and insurance remain as they were and that Anna would make a will leaving everything at her death to Sally.

Mrs. Thompson stated that she had a niece to whom she wished to leave $500 but that everything else was to go to Sally. She also told Bowers that she wanted the will in Sally's favor to be irrevocable.

On August 4, 1957, two days after the visit to Bowers' office, Irving died. As surviving tenant, Anna then became entitled to the savings account and the bonds; and as beneficiary, to the proceeds of the group life insurance policy. On September 3, 1957, she executed a will leaving $500 to her niece, Evarista Beskeen, and the residue of her estate to plaintiff. The will contained the following paragraph: "I hereby declare that I have received a substantial and adequate consideration from the insurance and bank account of my deceased son, Irving Thompson, for which I agreed to make the above named widow of Irving Thompson, the said Sally Thompson, the beneficiary of this, my Last Will and Testament, and for that reason and consideration, this Will is irrevocable, as to Sally Thompson."

A few weeks later, on September 24, 1957, Anna made a second will purporting to revoke all previous wills, devising her home and its furnishings to Sally and dividing the residue of her estate equally between Sally and Evarista Beskeen. Anna died on June 23, 1959.

Upon admission of the September 24, 1957 will to probate, plaintiff brought the present equity action to enforce Anna's oral agreement by impressing a trust on the assets of Anna Thompson's estate. After a nonjury trial the court entered judgment directing distribution to plaintiff of Anna Thompson's entire estate with the exception of $500 payable to Evarista Beskeen. The latter appeals.

■ The beneficiary of an agreement to make a will may seek a remedy which is called "quasi-specific performance," so called because the court cannot compel the making of a will and thus gives an equivalent remedy by impressing a constructive trust on the promised property. (*Ludwicki* v. *Guerin*, 57 Cal.2d 127, 130 [17 Cal.Rptr. 823, 367 P.2d 415]; *Bank of California* v. *Superior Court*, 16 Cal.2d 516, 524 [106 P.2d 879]; *West* v. *Stainback*, 108 Cal.App.2d 806, 809-810 [240 P.2d 366].) ■ Primarily defendant urges that plaintiff had an adequate remedy at law by way of an action for money damages and should not have equitable relief by specific performance. This position receives support from a number of California decisions. In effect these decisions hold that unless a plaintiff in an action for breach of a contract to make a will alleges and proves inadequacy of legal remedies,

he will be denied specific performance in equity. For example, in *Zellner* v. *Wassman*, 184 Cal. 80, 84 [193 P. 84], the court states: "The fact remains, however, that, in actions upon these agreements, as in other actions upon contracts, inadequacy of the legal remedy to compensate for the breach is the keystone of equitable jurisdiction." (Other cases adhering to this doctrine are *Morrison* v. *Land*, 169 Cal. 580, 587 [147 P. 259]; *Flood* v. *Templeton*, 148 Cal. 374, 378 [83 P. 148]; *Chahon* v. *Schneider*, 117 Cal.App.2d 334, 335 [256 P.2d 54]; *Murdock* v. *Swanson*, 85 Cal.App.2d 380, 385 [193 P.2d 81]; *DeMattos* v. *McGovern*, 25 Cal.App.2d 429, 431 [77 P.2d 522]; see also *Brown* v. *Superior Court*, 34 Cal.2d 559, 563-564 [212 P.2d 878].)

Other decisions express the contrary view, that adequacy of damages at law is no impediment. This view is traceable to *Jones* v. *Clark*, 19 Cal.2d 156, 160 [119 P.2d 731], which states: "Nor is there merit in the contention that plaintiff had an adequate remedy at law. As said in *Wolf* v. *Donohue, supra*, at p. 220 [206 Cal. 213 (273 P. 547)]: 'It is well settled in this state by numerous decisions that a court of equity will decree specific performance of such an agreement [to dispose of property by will] upon the recognized principles by which it is governed in the exercise of this branch of its jurisdiction.' "

The quoted statement in *Jones* v. *Clark* has since been used as abstract authority to sanction resort to equity in these cases without regard to adequacy of damages at law. (*Goldstein* v. *Hoffman*, 213 Cal.App.2d 803, 815-816 [29 Cal.Rptr. 334]; *Potter* v. *Bland*, 136 Cal.App.2d 125, 134-135 [288 P.2d 569].) This strain of case law does not recognize, disapprove or seek to distinguish the conflicting doctrine emanating from *Zellner* v. *Wassman, supra*, and similar decisions.

Of course, factual distinctions among these decisions are always possible. Sometimes the distinction turns on the nature of the property which the testator promised to bequeath, that is, whether it is money or whether it is some unique asset, such as real estate, for which a money judgment would be inadequate compensation. Distinctions might also turn on the character of the consideration supplied by the promisee during the defaulting testator's lifetime, for example, whether services and care furnished by the promisee were "ordinary" or "unique." (See *Monarco* v. *Lo Greco*, 35 Cal.2d 621, 626 [220 P.2d 737]; *Owens* v. *McNally*, 113 Cal. 444, 450 [45 P. 710, 33 L.R.A. 369]; additional cases cited 2

Witkin, Cal. Procedure, pp. 1376-1377.) In fact, however, these two lines of cases announce diverse concepts of law without regard to factual variations.

In enforcing the testator's contract the courts use the theory of constructive trusts as well as that of specific performance. The estate, and through it the legatees, would gain assets by the wrongful act of the testator; therefore equity intervenes under Civil Code section 2244 to establish an involuntary trust for the benefit of the person who would otherwise have the assets. (*Lauricella* v. *Lauricella*, 161 Cal. 61, 66-67 [118 P. 430]; *West* v. *Stainback, supra*, 108 Cal. App.2d at p. 815; *Shive* v. *Barrow*, 88 Cal.App.2d 838, 843 [199 P.2d 693].) Procedural and evidentiary requirements may turn on judicial preference for one or another of these theories. (See Sparks, Contracts to Make Wills (N.Y.U. Press, 1956) pp. 146-161; Costigan, *Constructive Trusts Based on Promises Made to Secure Bequests, Devises, or Intestate Succession*, 28 Harv.L.Rev. 237, 242-245.)

A number of cases state without qualification that jurisdiction over such actions rests in equity rather than the probate court; or that such contracts "may be enforced in equity." (*Ludwicki* v. *Guerin, supra*, 57 Cal.2d at p. 130; *Brown* v. *Superior Court, supra*, 34 Cal.2d at p. 565; *Estate of Rolls*, 193 Cal. 594, 599 [226 P. 608]; *Laurance* v. *Security First Nat. Bank*, 220 Cal.App.2d 622, 624 [34 Cal.Rptr. 56]; *Pluth* v. *Smith*, 205 Cal.App.2d 818, 829 [23 Cal.Rptr. 550].) Such blanket pronouncements lend inferential support to the cases which would permit equitable relief regardless of adequate legal remedies.

There is no necessity here for a choice between these clashing California doctrines. On the assumption that defendant has the preferable rule in the abstract, that inadequacy of a money action is a condition of equitable relief, the inadequacy is quite apparent here. Anna's broken promise was one to bequeath her entire estate, minus one specific legacy of $500. The net value of the estate could not be ascertained pending its administration. Certainly the place to determine its net value was in the probate proceeding, not in an action at law. Thus an action at law would perforce mark time pending development of the probate administration. Under these circumstances the remedy at law is inadequate, and equity provides a forum better adapted to the beneficiary's need by the simple device of impressing a trust on the residual estate. (*In re Peterson*, 76 Neb. 652 [107 N.W. 993, 111 N.W. 361]; Sparks, *op. cit.*, pp. 136-137, 150-151.)

Defendant urges that the court erred in not sustaining an objection to the competency of Floyd Bowers as a witness for the plaintiff. The objection was premised on Bowers' status as counsel of record for plaintiff. At the trial, counsel conceded that his objection raised a problem of professional ethics rather than competence.* Counsel's present argument is thus belied by his trial court concession. The trial court concession was correct, the present argument incorrect. (*Hotaling* v. *Hotaling*, 187 Cal. 695, 709 [203 P. 745].)

Counsel for defendant charges that Bowers' testimony should have been discredited because of an inconsistency as to the time of day when Anna Thompson and Irving called at Bowers' office to discuss Anna's will. The charge is a quibbling attack on the credibility of a witness, which will not be countenanced on appeal.

Judgment affirmed.

Pierce, P. J., and Schottky, J., concurred.

---

*See Canon 19, Canons of Ethics, American Bar Association, which has not been expressly incorporated in the Rules of Professional Conduct, State Bar of California. Rule 1 (49 Cal.2d 1) commends the American Bar Association canons to California attorneys.