[Civ. No. 22223. First Dist., Div. One. Aug. 16, 1965.]

JARRELL Q. HENDERSON et al., Plaintiffs and Appellants, v. RUBY M. FISHER, as Administratrix, etc., Defendant and Respondent.

Hotle & McConnell and William H. McConnell for Plaintiffs and Appellants.

Passalacqua & Mazzoni and James R. Mazzoni, Jr., for Defendant and Respondent.

MOLINARI, J.—Plaintiffs appeal from a judgment entered after a trial by the court awarding them $381.85 on a *quantum meruit* basis but refusing to grant specific performance of a written contract entered into between plaintiffs and decedent, Marion D. Baker. The sole issue presented on appeal is whether plaintiffs are entitled to specific performance of the subject agreement. We have concluded that they are and that the trial court erred in refusing to grant plaintiffs relief in this form.

### The Record

On August 11, 1959, plaintiffs and decedent entered into a written contract which provided as follows:

"Whereas, the first party, Marion D. Baker, is 86 years of age and blind and is in need of constant care, the parties of the second part agree to move into the home of Mr. Baker at 717 College Street in the city of Healdsburg, state of California, and to furnish all food necessary or reasonably required by Mr. Baker; and to do all laundry work required by him and to keep the house clean and in good repair and to water

the trees and shrubbery and to keep the premises in good condition as long as Mr. Baker lives.

"It is further agreed between the said parties that Mr. Baker shall pay the water and light bills and one-half of the gas bills, and that the second parties shall pay the telephone bills and the other half of the gas bills. It is also agreed that Mr. Baker shall pay for any new clothing that he may require, but that the second parties shall clean and repair said clothing when necessary.

"It is further agreed that Mr. Baker shall execute and deliver a deed of his interest in the real property, including his home and furniture at 717 College Street in Healdsburg, California, to the second parties, reserving to himself a life estate in the said property.

"It is further agreed between the parties hereto, that Mr. Baker shall pay for all taxes and insurance on the said property which may become due as long as he lives."

The factual background surrounding the making of this contract was as follows: For about 7 years prior to 1959 plaintiffs had been friends of decedent and his wife. They often referred to the Bakers as Grandma and Grandpa, and they had on numerous occasions helped the Bakers by performing various household chores for them. On July 24, 1959 Mrs. Baker died. About a week after her death and because Mr. Baker, who was blind and 86 years old, could not be left alone, plaintiffs moved into the Baker home. On August 11, 1959, at Baker's request, his attorney, Mr. Sayre, drew up the subject agreement. At this time Baker was in good health. However, 18 days after the execution of this agreement, Baker died. During this 18-day period plaintiffs performed the services set forth in the agreement. Baker did not, however, during this period execute the deed called for in the contract.

Based on these facts, plaintiffs on May 13, 1960 filed a creditor's claim in decedent's estate, demanding specific performance of the agreement or in the alternative $5,000, the reasonable value of the real and personal property which was the subject matter of the contract. This claim was rejected by defendant, the administratrix of decedent's estate. Plaintiffs then brought this action seeking specific performance or $5,000 as the value of the property in question, and alternatively $5,000 as the reasonable value of the services performed and the personal property supplied by them to de-

cedent. The trial court in its findings of fact and conclusions of law determined that the subject agreement "is one not properly the subject of an action for specific performance against the estate of Marion D. Baker and is therefore not enforceable by plaintiffs," but that plaintiffs were entitled to $381.85 on a *quantum meruit* basis, this being the amount which it determined as the value of the services and supplies which plaintiffs furnished to decedent during his lifetime.

The basis for the trial court's determination is disclosed by its "Opinion and Order for Findings." Although a trial judge's opinion may not be used to impeach, modify or add to his findings, it may be used for the purpose of discovering the process by which he arrived at his conclusion. (*1st Olympic Corp.* v. *Hawryluk*, 185 Cal.App.2d 832, 838 [8 Cal.Rptr. 728]; *Union Sugar Co.* v. *Hollister Estate Co.*, 3 Cal.2d 740, 750 [47 P.2d 273].) In its opinion the trial court stressed the fact that because the agreement indicated that decedent was to convey to plaintiffs a remainder interest in the real and personal property, reserving a life estate for himself, it was apparent that the transfer was to be made during the lifetime of decedent; that as such, the agreement lacked "the mutuality, the certainty and the fairness and adequacy of consideration required to have permitted its specific performance during Baker's lifetime"; and that "so far as the attempt to enforce it specifically against his estate is concerned it is within the class of cases that afford an adequate remedy at law upon quantum meruit and are not specifically enforceable against the estate of the deceased promisor."

### Applicable Law

 Beginning with some general principles concerning specific performance, we note that the type of action with which we are involved in the instant case is not truly one for specific performance since Baker, who is now deceased, cannot be compelled to execute the promised conveyance. However, if it is determined that plaintiffs are entitled to the property which Baker promised to convey to them, then the court may declare a constructive trust upon this property in the hands of those who have succeeded to the estate. This is, in effect, the equivalent of specific performance and is sometimes termed "quasi-specific performance." See *Staples* v. *Hawthorne*, 208 Cal. 578, 582 [283 P. 67]; *Fowler* v. *Hansen*, 48 Cal.App.2d 518, 522 [120 P.2d 161]; *Sonnicksen* v. *Sonnicksen*, 45 Cal. App.2d 46, 53 [113 P.2d 495]; *Bank of California* v. *Superior*

*Court,* 16 Cal.2d 516, 524 [106 P.2d 879]; *Thompson* v. *Beskeen,* 223 Cal.App.2d 292, 294 [35 Cal.Rptr. 676].)

■ Although the relief in a "quasi-specific performance" action differs from that in the traditional specific performance action the requisites for relief are identical. They are as follows: The plaintiff must show that his remedy at law is inadequate; the contract must be just and reasonable and must be supported by adequate consideration; there must be a mutuality of remedies, that is, the contract must be subject to specific performance by both of the contracting parties; the terms of the contract must be sufficiently definite for the court to know what to enforce; and the performance which the court is asked to compel must be substantially identical to that promised in the contract. (Civ. Code, §§ 3384, 3386, 3390, 3391;[1] 4 Witkin, Summary of Cal. Law (1960) Equity, §§ 17, 28, 31, pp. 2802, 2810, 2812; Rest., Contracts, §§ 358-380, pp. 633-711.)

■ Proceeding to discuss each of these basic requirements as they specifically apply to the contract before us, we note, first, as to the inadequacy of plaintiffs' remedy at law, it is the general rule that in the case of a contract for the transfer of an interest in land it is presumed that damages would not adequately compensate for the breach. (§ 3387; Rest., Contracts, § 360, p. 642; Corbin on Contracts, vol. 5A, § 1143, p. 126.) This presumption is based on the historic treatment of land as unique. (Rest., Contracts, § 360, pp. 642, 643.) Therefore, in cases involving the breach of a contract to transfer an interest in land, specific performance will be granted as a matter of course unless some other equitable reason for denial is shown. Accordingly, the party seeking specific performance need not establish inadequacy of the legal remedy and may rely upon this presumption. (See § 3387; *Morrison* v. *Land,* 169 Cal. 580, 586-587 [147 P. 259]; *Remmers* v. *Ciciliot,* 59 Cal.App.2d 113, 119 [138 P.2d 306].)

■ Where, as in the instant action, only part of the subject matter of the contract consists of land, specific performance of the whole of the contract may be decreed even though compensation in money would be an adequate remedy for the promisor's failure to perform that part of the contract calling for the transfer of ordinary chattels. (See *Mutz* v. *Wallace,* 214 Cal.App.2d 100 [29 Cal.Rptr. 170]; Rest., Contracts,

---

[1]Unless otherwise indicated, all statutory references are to the Civil Code.

§ 364, p. 658; Corbin on Contracts, vol. 5A, § 1146, pp. 148, 156, and cases cited therein at fn. 16.)

As applied to the instant case, therefore, we conclude that the contract between plaintiffs and decedent being one involving the transfer of land, plaintiffs' remedy at law is inadequate. The trial court's statement in its opinion that this contract "is within the class of cases that afford an adequate remedy at law upon quantum meruit" is not a correct articulation of the principle involved. The question, in determining the adequacy of plaintiffs' remedy at law, is not whether they have some remedy at law apart from the contract, but whether their remedy at law upon the contract itself, that is, for damages, is sufficient. (*Morrison* v. *Land, supra,* p. 587; *Wehen* v. *Lundgaard,* 41 Cal.App.2d 610, 612 [107 P.2d 491]; *Brown* v. *Superior Court,* 34 Cal.2d 559, 561-562 [212 P.2d 878]; Rest., Contracts, § 358, p. 633; Corbin on Contracts, § 1157, p. 179.) Accordingly, the fact that plaintiffs are entitled at law to reimbursement upon a *quantum meruit* theory for the services and supplies which they furnished decedent is not dispositive of the issue of whether their remedy at law upon the contract which they entered into with decedent is adequate.

The second requirement for the specific enforcement of a contract is that the consideration be adequate. (§ 3391, subd. 1.) The proper time for testing the adequacy of consideration is as of the formation of the contract. (*O'Connell* v. *Lampe,* 206 Cal. 282, 285 [274 P. 336]; *O'Donnell* v. *Lutter,* 68 Cal.App.2d 376, 384 [156 P.2d 958]; *Westwood Temple* v. *Emanuel Center,* 98 Cal.App.2d 755, 759 [221 P.2d 146].) And the proper test to apply in determining adequacy of consideration in a contract involving the transfer of property is not whether the promisor received the highest price obtainable for his property, but whether the price he received is fair and reasonable under the circumstances. (§ 3391, subd. 2; *Baran* v. *Goldberg,* 86 Cal.App.2d 506, 510 [194 P.2d 765]; *Dennis* v. *Overholtzer,* 178 Cal.App.2d 766, 777 [3 Cal.Rptr. 193]; *House* v. *Lala,* 180 Cal.App.2d 412, 418 [4 Cal.Rptr. 366].) Moreover, in addition to the value of the property to be conveyed, the court may consider such factors as the relationship of the parties, their friendship, love, affection, and regard for each other, and the object to be obtained by the contract. (*Ornbaun* v. *Main,* 198 Cal.App.2d 92, 97 [17 Cal. Rptr. 631]; *O'Donnell* v. *Lutter, supra,* p. 384; *O'Hara* v. *Wattson,* 172 Cal. 525, 528 [157 P. 608].)

In the instant action, the trial court made no specific finding as to adequacy of consideration except insofar as it found that "the services and expenses laid out by plaintiffs for Marion D. Baker during his lifetime were not and are not worth the full value of the aforedescribed real property and personal property, nor any substantial part thereof." While the question of adequacy of consideration is generally considered as a question of fact, the determination of the trial court being final unless totally unsupported by the evidence (*Gomes* v. *Borba*, 99 Cal.App.2d 38, 42 [221 P.2d 124]; *Westwood Temple* v. *Emanuel Center*, supra, p. 759; *House* v. *Lala*, supra, p. 418), it appears in the instant case that the trial court erroneously determined this question as of the date of trial rather than as of the date of execution of the contract. Accordingly, we are not bound by such determination. We are satisfied, moreover, that the evidence adduced at the trial can support no other conclusion than that decedent's promise to convey his property to plaintiffs was amply supported by consideration. At the time the contract was entered into Baker was in good health and the duration of his life was uncertain. Moreover, he was in great need for plaintiffs' services as he did not want to go to an "old folks" home. Also the fact that decedent had a very warm and longstanding friendship with plaintiffs must be taken into consideration. And finally, we note that before entering into this contract with plaintiffs, Baker called a family conference and obtained the approval of his relatives regarding his proposed action. This being the state of the evidence on the issue of adequacy of consideration when viewed at the time of formation of the contract, we are of the opinion that the subject contract was fair and reasonable as to Baker and that it was supported by adequate consideration. The fact that Baker died within a short time after entering into the contract so that plaintiffs' services were of short duration cannot alter this conclusion, since, as we have indicated, adequacy of consideration is determined as of the date of execution of the contract without regard to subsequent events. (*O'Donnell* v. *Lutter*, supra, p. 384; *O'Connell* v. *Lampe*, supra, p. 285; and see cases noted in Corbin on Contracts, vol. 5A, § 1162, pp. 205, 216-217.) As the court stated in *Walker* v. *Calloway*, 99 Cal.App.2d 675 [222 P.2d 455], quoting from *Velikanje* v. *Dickman*, 98 Wash. 584 [168 P. 465]: " '[T]he extent of the consideration is to be measured by the breadth of the undertaking rather than by the eventuality. Respondent might have had to serve and nurse

for many years. Each party to the agreement knowingly stood the loss or gain by that contingency.' '' (P. 682.)

Adverting to the question of mutuality of remedies we first note the applicable rule as stated in section 3386 as follows: ''Neither party to an obligation can be compelled specifically to perform it, unless the other party thereto has performed, or is compellable specifically to perform, everything to which the former is entitled under the same obligation, either completely or nearly so, together with full compensation for any want of entire performance.'' In contracts involving the performance of personal services by one of the contracting parties, it is clear that at the inception of the contract specific performance cannot be decreed against this party because of the rule of long standing that a person cannot be compelled to perform personal services. (§ 3390; *Cooper* v. *Pena,* 21 Cal. 403, 412; Rest., Contracts, § 379, p. 702.) Accordingly, such a contract, at its inception, lacks mutuality of remedies and is, therefore, not specifically enforceable against the other party. (*Moore* v. *Heron,* 108 Cal.App. 705, 709 [292 P. 136]; *Moklofsky* v. *Moklofsky,* 79 Cal.App.2d 259, 262 [179 P.2d 628]; *Tompkins* v. *Hoge,* 114 Cal.App.2d 257, 264 [250 P.2d 174].) The prevailing rule, and that adopted in California in section 3386, is, however, that such contracts which lack mutuality in their inception may be specifically enforced after the want of mutuality is removed by the performance by one party of his obligation under the contract. (*Brown* v. *Town of Sebastopol,* 153 Cal. 704, 707 [96 P. 363, 19 L.R.A. N.S. 178]; Rest., Contracts, § 372, p. 677.) Thus, although the party who has contracted to perform personal services cannot maintain an action for specific performance while the contract remains executory as to him, if at the time he brings his action for specific performance he has fully carried out his promise to perform such services, then the defense of lack of mutuality can no longer be asserted and the court may properly grant the requested remedy and order the other party to specifically perform his promise. (*Stone* v. *Burke,* 110 Cal.App.2d 748, 756 [244 P.2d 51]; *Van Fossen* v. *Yager,* 65 Cal.App.2d 591, 596 [151 P.2d 14]; *Thurber* v. *Meves,* 119 Cal. 35, 38 [50 P. 1063, 51 P. 536]; *Jones* v. *Clark,* 19 Cal.2d 156, 161 [119 P.2d 731].)

 It is clear from the foregoing cases that the appropriate time for determining whether the subject contract lacks mutuality is as of the time its enforcement is sought, and not as of its execution. In the present case, although the trial

court made no specific finding or conclusion of law on the issue of mutuality, it may be implied from its other findings that it determined that there was no mutuality of remedy. This is apparent from the trial court's opinion wherein it is stated that the contract "is lacking in the mutuality . . . required to have permitted its specific performance during Baker's lifetime. . . ." It is also apparent, however, that in making its determination as to mutuality the court did so on the basis of the mutuality of obligations which existed between plaintiffs and Baker while the latter was still alive. As we have indicated, the trial court should, instead, have considered the problem of mutuality as of the date at which plaintiffs sought enforcement of the contract, that is, after Baker's death. Had the court done so, it is clear that the defense of lack of mutuality would not have been valid since plaintiffs had at this time fully performed their obligation to take care of Baker during his lifetime.

With respect to the requirement for specific performance that the subject contract be certain in its terms, defendant contends that the contract which plaintiffs seek to enforce is uncertain for the reason that it does not indicate a time for performance by Baker. In rejecting the validity of this contention we analogize the facts in the present case to the situation in which a person promises to will property to a certain individual in exchange for services of a peculiar nature involving the assumption or continuation of a close family relationship, but dies without executing the will. Although in such situations the contract does not generally specify a certain time for performance on the part of the promisor, if the promisor dies without having performed his promise the courts will nonetheless decree quasi-specific performance by impressing a constructive trust on the particular property in favor of the promisee, provided, of course, that the contract is otherwise susceptible of being specifically enforced. (*Jones* v. *Clark, supra,* 19 Cal.2d 156, 160; *Barry* v. *Beamer,* 8 Cal.App. 200, 210 [96 P. 373]; *Bank of California* v. *Superior Court, supra,* 16 Cal.2d 516, 524; *Ludwicki* v. *Guerin,* 57 Cal.2d 127, 130 [17 Cal.Rptr. 823, 367 P.2d 415]; *Brown* v. *Superior Court, supra,* 34 Cal.2d 559, 563-564.)

It is only where the uncertainty or incompleteness of a contract prevents the court from knowing what to enforce that the defense of uncertainty has rationality. (See § 3390, subd. 5; *Mueller* v. *Chandler,* 217 Cal.App.2d 521, 523-524 [31 Cal.Rptr. 646]; Rest., Contracts, § 370, pp. 673-674.)

478

No such doubt exists in the instant case where the court was asked to impress a constructive trust in favor of plaintiffs based on a contract which was to be performed at some time during the life of a person who is now deceased and obviously can no longer perform his promise.

The trial court's opinion indicates that the trial judge was persuaded in his decision by the fact that the promise which Baker made required him to execute a deed in favor of plaintiffs, reserving himself a life estate in the subject property. The trial court therein concluded that ''The reservation of a life estate would be wholly inconsistent with any intent that his part of the contract would not be performable until on or after his death.'' While it is clearly the law that a court must adhere to the terms of the contract in decreeing specific performance, we are of the opinion that a decree of quasi-specific performance in the instant case is not violative of any equitable principles and is, in fact, proper in light of the willingness of courts to allow this result in analogous cases. We refer to the many cases (some of which we have hereinabove cited) which have granted relief in the form of quasi-specific performance where the breached promise was one to convey certain property by will. Quite clearly in these cases the courts in granting equitable relief are deviating from the precise terms of the contract which invariably require the promisor-decedent to transform his promise into specific provisions of a will during his lifetime. However, although the promisor is obviously unable to perform the contract as it was made, the courts are not deterred by this fact and are willing in proper cases to grant relief, thereby securing to the injured party the performance which he would have received had the contract been performed by the promisor during his lifetime. (See 4 Witkin, Summary of Cal. Law (1960) Equity, § 22, p. 2806; 81 C.J.S., Specific Performance, § 87, p. 596.) Similarly, in those cases in which the decedent failed during his lifetime to perform his promise to adopt the promisee, courts of equity frequently allow the promisee to inherit from the promisor as though the latter had in fact performed his promise. (See cases cited in 81 C.J.S., Specific Performance, § 87b, p. 602.) In both types of cases the promise of which enforcement is sought is clearly one requiring the promisor to perform some act during his lifetime. Nonetheless, courts of equity will in proper circumstances grant relief in the form of quasi-specific performance, thereby deviating from the exact terms of the decedent's promise.

In the instant case we are faced with an analogous situation. Clearly the promise which Baker made was one which he was to perform during his lifetime and which was impossible of performance after his death. Under the authority of those cases involving a promise to will or a promise to adopt, we conclude, however, that quasi-specific performance is a proper remedy in the instant case. In support of this conclusion we note the case of *Williams* v. *Williams,* 128 Ark. 1 [193 S.W. 82], in which the plaintiff sought specific performance of an oral contract by which the decedent promised to convey certain property to the plaintiff in return for the plaintiff's promise to take care of the decedent during the latter's lifetime. Based on the evidence presented by plaintiff which sufficiently proved the existence of the contract and the performance by the plaintiff of his obligation under the contract, the trial court decreed specific performance. On appeal the judgment was affirmed, the opinion containing the following discussion relevant to the issue before us in the instant action: ''There is indeed some doubt whether the agreement was that the old man was to convey the land to plaintiff during his lifetime, or was to convey it by last will. We do not think it is necessary that the testimony should be free from conflict or variance on that issue, since it is fully established that the property was to be conveyed by some mode, and it is immaterial whether it was to be done by conveyance during the lifetime of the grantor or by last will and testament. The basis of the plaintiff's claim is that there was a contract whereby he was to get the property in consideration of his services rendered to his uncle, and it is entirely unimportant as to the particular method in which the property was to be conveyed.'' (P. 83 [193 S.W.].)

### Probate Code Section 850

■ Relying upon Probate Code section 850[2] which provides for specific performance of a contract against the estate

---

[2]Prob. Code, § 850 provides as follows: ''If a person who is bound by contract in writing to convey any real property or to transfer any personal property dies before making conveyance or transfer, and the decedent, if living, might have been compelled to make such conveyance or transfer, or if a person binds himself or his executor or administrator by contract in writing to convey any real property or to transfer any personal property upon or after his death, and the contract is one which can be specifically enforced, the court in which proceedings are pending for the administration of the estate of the decedent may make a decree authorizing and directing the executor or administrator to convey or transfer the property to the person entitled thereto.''

of a deceased promisor, defendant claims that since Baker's promise was not specifically enforceable against him during his lifetime, nor did he promise to convey property at his death, plaintiffs are not entitled to equitable relief upon the contract. While we agree with defendant to the extent that the subject contract does not come within the purview of Probate Code section 850, it is clear from the case law interpreting this section that the remedy which it provides is not exclusive, but that it was intended to provide a means of relief which is an alternative to an indepedent action in equity and which is available "in cases where the legal representatives of the decedent's estate and the other parties to a contract are in accord that the agreement made by a decedent should be enforced." (*O'Donnell* v. *Lutter, supra,* 68 Cal.App.2d 376, 385; *Bewick* v. *Mecham,* 26 Cal.2d 92, 95-96 [156 P.2d 757, 157 A.L.R. 1277]; *Estate of Roche,* 202 Cal.App.2d 295, 298 [20 Cal.Rptr. 775].) Accordingly, the fact that the contract which is the subject of this action is not within the terms of Probate Code section 850 has no bearing on plaintiffs' right to relief in the form of quasi-specific performance based on the general equity jurisdiction of the court.

Since the law and undisputed facts require judgment to be entered for plaintiffs, the judgment is reversed with instructions to the trial court to amend its findings of fact and conclusions of law in accordance with the views herein expressed, and to enter a modified judgment in favor of plaintiffs and against defendant in conformity with such conclusion of law for specific performance, and in the alternative, if, for any reason specific performance cannot be had, for damages in the sum of $5,000, together with costs of suit.

Sullivan, P. J., and Sims, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 13, 1965.